CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 2 1 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

DAVID B. BRIGGMAN, )
)
    Plaintiff, )
)
v. )
)
COMMONWEALTH OF VIRGINIA, )
DEPARTMENT OF SOCIAL SERVICES, )
DIVISION OF CHILD SUPPORT )
ENFORCEMENT, et al., )
)
    Defendants. )

Civil Action No. 5:07CV00073

**MEMORANDUM OPINION**

By: Hon. Glen E. Conrad
United States District Judge

    The plaintiff in this case, proceeding <u>pro se</u>, has alleged that numerous state agencies and officials have violated his civil rights and have committed actions which are against federal and state law during the Commonwealth's handling of the plaintiff's child support obligations and its collection efforts related to the plaintiff's nonpayment of child support. This matter is before the court on the motion to dismiss filed by many of the state defendants as well as the plaintiff's motions for class certification and preliminary injunction. For the reasons set forth below, the defendants' motion to dismiss will be granted, and the plaintiff's motions will be denied.

## FACTUAL BACKGROUND

    The plaintiff, David B. Briggman ("Briggman"), was required to pay child support pursuant to a 1988 order of the Arlington County Circuit Court. According to the plaintiff, at the time the order was entered, he was already $6,300 in arrears on his child support obligations. Since that time, Briggman has accumulated arrearages upon which interest was imposed at statutory rates, has been subject to several motions to show cause why he should not be found in

contempt for lack of payment, has been sentenced to at least two periods of incarceration after being found in contempt for nonpayment of child support, and has been required to pay purge clauses of varying amounts in order to obtain his release from prison on those contempt charges. Although the child to whom Briggman owed a duty of support has apparently attained her majority at this time, he may still be in arrears with regard to certain outstanding child support obligations.

The defendants named in this case include: the Department of Social Services, Division of Child Support Enforcement; Office of the Attorney General; Circuit Court Judges; Juvenile and Domestic Relations Court Judges; Clerks of the Juvenile and Domestic Relations Courts; the Virginia State Bar; Bob McDonnell, in his official capacity as Attorney General; Marilyn B. Tavenner, in her official capacity as Secretary of Health and Human Resources; Maurice Jones, individually and as Commissioner of the Department of Social Services; Nathaniel L. Young, Jr., individually and as Director of the Division of Child Support Enforcement; Nancy L. Crawford, individually and as Regional Special Counsel for the Division of Child Support Enforcement; Loretta Swope, individually and as Program Administrative Manger III for the Division of Child Support Enforcement; Michele Burke, Harvey A. Wynn, James Hawkins, and Diane Spencer-Storey, Program Administrative Specialists for the Division of Child Support Enforcement; and Janice J. Wellington, Thomas G. Underwood, Herman A. Whisenant, Jr., Julia S. Savage, and Frank A. Hoss, Jr., Juvenile and Domestic Relations Court Judges. In addition to these state defendants, Briggman had also named Gregory E. Stambaugh and James B. Pattison as "Private Prosecutors" for the Commonwealth of Virginia, however he has moved to voluntarily dismiss both of these individuals from this action. With regard to the remaining defendants, Briggman

2

alleges that they were involved with various actions related to his child support obligations which deprived him of civil rights and rights secured to him pursuant to Virginia and federal law as well as the Constitution of the United States.

## THE PLAINTIFF'S CLAIMS

Briggman has asserted twelve claims in his amended complaint, some against particular defendants and some against all of the defendants generally. Briggman also contends that the actions taken by the defendants have affected persons who are similarly situated. In that regard, the plaintiff has filed a motion for class certification in order to convert this action to a class action, presumably with himself as the class representative.

In Count One of the plaintiff's amended complaint, Briggman states that he has been made subject to legal proceedings initiated by non-attorney employees of the Division of Child Support Enforcement ("DCSE") in violation of Virginia law, which prohibits the unauthorized practice of law. The plaintiff states that this practice has been sanctioned by the Office of the Attorney General as well as by all the judges of the Commonwealth, including particularly the named defendants Janice J. Wellington, Thomas G. Underwood, Herman A. Whisenant, Jr., and Julia S. Savage. The plaintiff also states that defendants James Hawkins and Diane Spencer-Storey have signed pleadings on behalf of the DCSE and are not attorneys. Briggman claims that this practice has deprived him of his civil rights in that he was subjected to arrest, imprisonment and the loss of money without due process of law in violation of 42 U.S.C. § 1983.

In Count Two, the plaintiff contends that judges in the Juvenile and Domestic Relations Courts routinely impose purge clauses upon persons, including Briggman, who have been found guilty of criminal contempt and sentenced to a period of incarceration, presumably for

3

nonpayment of child support. The plaintiff claims that the purge clauses result in the re-classification of such an individual from a criminal contemnor to a civil contemnor, which in turn eliminates the entitlement for "day-for-day" credit off his term of imprisonment and results in the deprivation of liberty and property without due process of law in violation of 42 U.S.C. § 1983.

In Count Three, Briggman charges the defendant judges of the Juvenile and Domestic Relations Courts with imposing purge clauses against civil contemnors, including himself, without making any finding with regard to the contemnor's present ability to pay such a purge clause. The plaintiff states that Virginia law does not require a judge to make such a finding prior to the imposition of a purge clause. Nevertheless, Briggman claims that this action has deprived him of his liberty and property without due process of law in violation of 42 U.S.C. § 1983.

In Count Four, the plaintiff states that the Clerks of the Juvenile and Domestic Relations Courts, without the intervention of a judge, are issuing civil show cause summonses based upon the alleged failure to comply with child support obligations and are determining whether to issue a criminal or civil show cause summons in violation of Va. Code Ann. § 16.1-278.16, which requires the court to make such determinations. The plaintiff claims that these actions have deprived him of liberty and property without due process of law in violation of 42 U.S.C. § 1983.

In Count Five, asserted against only defendant Underwood, the plaintiff claims that he was subjected to false arrest and imprisonment when defendant Underwood issued a warrant for the plaintiff's arrest due to failure to appear at a hearing scheduled in state court during a period when Briggman had removed his case to federal court. Although the case was remanded back to

4

state court shortly after the hearing date, the plaintiff contends that defendant Underwood took his action in the absence of any jurisdiction over Briggman's case.

In Count Six, asserted against only defendant Savage, the plaintiff claims that he was subjected to false arrest and imprisonment when defendant Savage issued a capias for his arrest based upon the nonpayment of an $8,000 purge clause imposed after a finding that Briggman was in civil contempt of court. The plaintiff claims that he had appealed the order of the Juvenile and Domestic Relations Court judge to the Circuit Court and that defendant Savage lacked any jurisdiction to order his arrest or to determine whether he had perfected his appeal to the Circuit Court.

In Count Seven, the plaintiff states that defendants DCSE and the Juvenile and Domestic Relations and Circuit Court judges have improperly made retroactive modifications to child support orders in violation of 42 U.S.C. § 666 and Va. Code § 20-108. Specifically, the plaintiff claims that defendant Wellington retroactively modified a 1988 support order by awarding the plaintiff's ex-wife $6,168 for his daughter's medical payments in 1997. Furthermore, in 2005, Briggman asserts that defendant Underwood agreed to further modify the 1997 order by awarding interest on the medical payments for a period of three years. Later, defendant Whisenant allegedly further modified the 1988 support order by awarding interest on the entire period during which the award of medical payments was outstanding.

In Count Eight, the plaintiff asserts that defendant DCSE has engaged in the retroactive modification of interest rates on child support arrearages in violation of 42 U.S.C. § 666 and Va. Code § 20-108. Specifically, Briggman claims that, after Va. Code § 63.1-267 was passed in 1995 to permit the collection of interest on child support arrearages, the Division improperly

5

applied the statute to arrearages currently on the books rather than only to prospectively accumulated child support arrearages.

In Count Nine, the plaintiff claims that defendants DCSE, the judges in the Juvenile and Domestic Relations Courts and Circuit Courts, the Office of the Attorney General and the Virginia State Bar have aided non-attorney employees of the DCSE in signing pleadings and motions to show cause thus engaging in the unauthorized practice of law. The plaintiff contends that this action is in violation of his civil rights and of 42 U.S.C. §§ 1983, 1985 and 1986.

In Count Ten, the plaintiff alleges that the judges in the Juvenile and Domestic Relations Courts and Circuit Courts have permitted and sanctioned the practice of retaining private attorneys, including Gregory Stambaugh and James Pattison, who have been voluntarily dismissed from this action, to represent the "victim" in child support matters. The plaintiff contends that this action is in violation of his civil rights and of 42 U.S.C. §§ 1983, 1985 and 1986.

In Count Eleven, the plaintiff asserts that the above described actions by all of the defendants have resulted in the intentional infliction of emotional distress upon himself and similarly situated persons.

Finally, in Count Twelve, the plaintiff asserts that the above described actions by all of the defendants constitute an "abuse of process" against himself and similarly situated parties.

The plaintiff seeks damages only against the specifically named defendant judges for violations of his civil rights and against defendants Underwood, Whisenant, and Savage also for false arrest, false imprisonment and abuse of process. With regard to the remaining defendants, the plaintiff appears to seek only injunctive relief with regard to the alleged constitutional and

6

federal and state law violations. More specifically, Briggman has asked the court to enter orders to (1) mandate that all non-attorney employees of the DCSE refrain from signing any legal pleadings or motions until they are explicitly permitted to do so by statute; (2) prohibit any court from enforcing any order which was entered following a pleading filed by a non-attorney employee of the DCSE; (3) mandate that the DCSE return all fines or purge clauses paid by non-custodial parents who, as a result of proceedings initiated by non-attorney employees of the DCSE, have been fined, imprisoned, or paid purge clauses; (4) mandate the release of all non-custodial parents who are currently imprisoned in any correctional facility in Virginia as a result of proceedings initiated by non-attorney employees of the DCSE; (5) prohibit any courts from allowing "private prosecutors" to prosecute criminal contempt proceedings which arise out of underlying civil matters where the "prosecutors" represent the "victim;" (6) prohibit Virginia courts from imposing purge clauses in criminal contempt proceedings; and (7) prohibit Virginia courts from imposing purge clauses in civil contempt proceedings without first determining whether the contemnor has the present ability to pay the purge clauses ordered.

This matter is before the court on several motions. First, the defendants, with the exception of the Circuit Court judges generally, the Juvenile and Domestic Relations Court judges generally, and the clerks of the Juvenile and Domestic Relations Courts all of whom have not been properly served, have filed a motion to dismiss. Second, the plaintiff has filed a motion for class certification. The plaintiff has also filed a motion for preliminary injunction to prohibit non-attorney employees of the DCSE from signing any pleadings on behalf of the agency or to prohibit such employees from signing motions for show cause summonses on behalf of the agency. Finally, the plaintiff has filed a motion for second preliminary injunction which requests

7

the court to enter an order to prohibit the Commonwealth of Virginia or any agency thereof from

enforcing any state court order entered as a result of a proceeding initiated by any pleading or

motion that was signed by a non-attorney employee of the DCSE.

## THE DEFENDANTS' MOTION TO DISMISS

The defendants characterize this action as one arising from Briggman's failure to meet his

child support obligations. The defendants have moved to dismiss based upon Federal Rule of

Civil Procedure 12(b)(1) because they allege the court has no subject matter jurisdiction pursuant

to the domestic relations exception, the <u>Rooker</u>-<u>Feldman</u> doctrine, and the Eleventh Amendment.

In addition, the defendants claim that they are protected by judicial immunity in the case of the

judges and by qualified immunity in the case of the state defendants in their official capacities.

Furthermore, the defendants assert that, even if the court should find it has subject matter

jurisdiction to decide this case, the amended complaint should be dismissed pursuant to Federal

Rule of Civil Procedure 12(b)(6) because the plaintiff has failed to state a cause of action upon

which relief may be granted.

**A.      Standard of Review**

1.      Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may file a motion to dismiss for

lack of jurisdiction over the subject matter. A plaintiff bears "the burden of proving that subject

matter jurisdiction exists." <u>Evans v. B.F. Perkins Co., a Div. of Standex Intern. Corp.</u>, 166 F.3d

642, 647 (4th Cir. 1999). In considering a motion to dismiss pursuant to Rule 12(b)(1), a court

should "regard the pleadings as mere evidence on the issue, and may consider evidence outside

the pleadings without converting the proceeding to one for summary judgment." 166 F.3d at 647

8

(internal citation omitted).  A court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (internal citation omitted).

2.      Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court "should accept as true all well-pleaded allegations" and should construe those allegations in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  As the Supreme Court recently noted, a complaint need not assert detailed factual allegations, but must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  Furthermore, even assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level."  127 S. Ct. at 1965.

**B.      The Domestic Relations Exception**

The state defendants argue that the court lacks jurisdiction under the domestic relations exception to federal jurisdiction, which prohibits federal courts from issuing or altering "divorce, alimony, and child custody decrees." Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992).  The domestic relations exception also applies to cases involving child support.  Cole v. Cole, 633 F.2d 1083, 1088 (4th Cir. 1980).  The defendants contend that, even though Briggman has referenced federal statutes and constitutional provisions, his claims essentially assert that the Virginia courts have wrongly decided child support issues in his case and improperly imposed interest upon the plaintiff's child support obligations.

9

Although the defendants are generally correct with regard to the parameters of the domestic relations exception, that exception applies only to limit diversity jurisdiction and "has no generally recognized application as a limitation on federal question jurisdiction." United States v. Johnson, 114 F.3d 476, 481 (4th Cir. 1997). See also, Ankenbrandt, 504 U.S. at 695-700 (explaining that the domestic relations exception is grounded in the diversity statute, and that it has no constitutional foundation); United States v. Bailey, 115 F.3d 1222, 1231 (5th Cir. 1997) (holding that the exception does not apply to cases based on federal question jurisdiction). As a result, because Briggman has couched his claims primarily under federal law, the domestic relations exception will not deprive the court of jurisdiction in this case.

**C.    The Rooker-Feldman Doctrine**

The defendants next claim that this court lacks subject matter jurisdiction over all of Briggman's claims in this case by operation of the Rooker-Feldman doctrine because the amended complaint alleges injuries which resulted "from the state court's entry of support orders and subsequent orders of contempt based upon the plaintiff's failure to meet his child support obligations." The defendants also assert that the plaintiff's claims with regard to the unauthorized practice of law by certain DCSE non-attorney employees are specifically barred by the Rooker-Feldman doctrine because Briggman previously raised this very issue before the Virginia State Bar's Standing Committee on Unauthorized Practice of Law which dismissed Briggman's complaints. Although the court does not agree that the Rooker-Feldman doctrine operates to deprive it of jurisdiction over all of the plaintiff's claims in this case, the court does find that it lacks jurisdiction over the claims asserted in Counts One, Seven, and Nine of the

amended complaint concerning the alleged unauthorized practice of law by non-attorney

employees of the DCSE and the retroactive modification of a child support order.

The <u>Rooker</u>-<u>Feldman</u> doctrine is based upon the holdings of the Supreme Court in

<u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923) and <u>District of Columbia Court of Appeals v.</u>

<u>Feldman</u>, 460 U.S. 462 (1983). The doctrine operates to deprive a district court of subject matter

jurisdiction only in a narrow set of circumstances, specifically in "cases brought by state-court

losers complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgements."

<u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>, 544 U.S. 280, 284 (2005). In <u>Davani v.</u>

<u>Virginia Dep't of Transp.</u>, 434 F.3d 712, 713 (4th Cir. 2006), the Fourth Circuit held that "the

<u>Rooker</u>-<u>Feldman</u> doctrine applies only when the loser in state court files suit in federal district

court seeking redress for an injury allegedly caused by the state court's decision itself." That is,

"<u>Exxon</u> requires us to examine whether the state-court loser who files suit in federal district court

seeks redress for an injury caused by the state-court decision itself. If he is not challenging the

state-court decision, the <u>Rooker</u>-<u>Feldman</u> doctrine does not apply." 434 F.3d at 718.

In this case, Briggman has brought an action under 42 U.S.C. § 1983 with regard to the

alleged unauthorized practice of law by non-attorney employees of the DCSE, claiming generally

that the practice has deprived him of liberty and property without due process. As noted earlier,

Briggman had previously submitted this very complaint to the Virginia State Bar's Standing

Committee on Unauthorized Practice of Law. The Committee conducted an inquiry into the

matter and dismissed Briggman's complaints in a letter dated February 22, 2006. In support of

its decision, Jon C. Poulson, the Committee's Chair, stated as follows:

11

At the meeting on February 14, 2006, the Committee considered the applicable law, UPL Opinions, and the evidence, and concluded that the activity which is the subject of your complaints, namely, that lay employees of the DCSE completed and filed form pleadings in a Juvenile and Domestic Relations Court, constitutes the practice of law as defined by the Supreme Court of Virginia under Part 6, Section I, Unauthorized Practice Rule 1 and UPL Ops. 207 and 73. The Committee further concluded, however, that Virginia Code Section 16.1-260(A) authorizes the DCSE to file such pleadings on its behalf, through its lay employees and, therefore, that the conduct complained of is the authorized practice of law by such employees. The Committee found it unnecessary to address the issue of whether Attorney General Op. 637 (1988) is entitled to any weight in the Committee's decision in this matter. Accordingly based on the above conclusions the Committee, by unanimous vote, dismissed these matters from its docket.

See Reply Memorandum in Support of Defendants' Motion to Dismiss, Exhibit A.

In Allstate Ins. Co. v. West Virginia State Bar, 233 F.3d 813, 821 (4th Cir. 2000), decided before Exxon, supra, the Court held that the district court lacked subject matter jurisdiction to hear a claim which essentially sought a review of a decision made by the West Virginia State Bar Committee on Unlawful Practice. The Committee had previously issued an opinion that Allstate was engaging in the unauthorized practice of law through the distribution of a pamphlet advising persons who might have a claim against Allstate as to whether they might need the advice of an attorney. 233 F.3d at 815. Allstate then filed an action in federal district court claiming that the committee's action violated its right to free speech under the First Amendment and that it represented an attempt to restrain interstate commerce in violation of the dormant commerce clause. Id. The Court first held that the actions and the opinion of the committee were of "a judicial rather than administrative character" and that the State Bar as well as the committee were "agencies within and a part of the system of state courts in West Virginia." Id. at 817-18. The Court then found that the Rooker-Feldman doctrine prevented the district court from reviewing the decision of the committee because "[w]e cannot rule that Allstate's pamphlet is speech

12

protected by the First Amendment without also concluding that the committee reached its decision in error. . . . Whether or not the committee mentioned expressly Allstate's First Amendment claim, Allstate's constitutional challenge is inextricably intertwined with the committee's decision." Id. at 819.

In Konan v. Sengel, 239 Fed. Appx. 780 (4th Cir. 2007) (unpublished), decided after Exxon, the Court, citing Allstate, supra, held that the Rooker-Feldman doctrine barred review of a decision of the Disciplinary Board of the Virginia State Bar. After he was disbarred by the Disciplinary Board, the plaintiff filed suit in federal district court claiming violations of the equal protection clause and his due process rights. 239 Fed. Appx. at 781. The Court held that "[b]ecause the Board's function is judicial in nature, we hold that its rulings are subject to the Rooker-Feldman doctrine and, therefore, not reviewable by a federal district court." Id.

Because the issue raised in Count One of the amended complaint has been previously decided by the Virginia State Bar's Standing Committee on Unauthorized Practice of Law, acting in a judicial capacity, the court finds that, as in Allstate and Konan, supra, the Committee's rulings are subject to the Rooker-Feldman doctrine and, as such, are not subject to review by this court. The plaintiff's argument that he was not a party to the hearing before the Committee and that he could not appeal the Committee's decision is unavailing. Because the court lacks subject matter jurisdiction over the plaintiff's claim, it may not proceed to consider whether the Committee's decision should be called into question based upon the lack of opportunity to appeal that decision.[1] Therefore, both Count One as well as the related Count Nine of the amended

---

[1] In finding that it does not have subject matter jurisdiction over the plaintiff's claim, the court does not mean to suggest that this claim does not have some arguable merit. Nevertheless, the state judicial system is the proper forum for this dispute, and the court notes that the plaintiff has always had the opportunity to contest motions

complaint will, therefore, be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) due to lack of subject matter jurisdiction.[2]

In Count Seven, regarding the allegedly retrospective modification of child support orders in violation of both federal and state law, the plaintiff contends that defendant Wellington retroactively modified the 1988 support order when he awarded Briggman's ex-wife a sum for medical payments for his daughter and that defendant Underwood subsequently approved the imposition of interest on that award pursuant to a request from the DCSE. The plaintiff does not seek injunctive relief with regard to this claim, therefore he is apparently seeking only compensatory damages relating to these additional sums imposed. In any case, Briggman appears to assert this claim as a state court loser complaining of injuries caused by the decisions of two state court judges with regard to his child support obligations and seeks a review by this court of those decisions. Therefore, the <u>Rooker</u>-<u>Feldman</u> doctrine will again apply to deprive the court of subject matter jurisdiction over this claim, and Count Seven of the amended claim will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

**D.  Eleventh Amendment Immunity**

The defendants also claim that the Eleventh Amendment bars the plaintiff's claims for damages against the Commonwealth or any state agencies. The Eleventh Amendment operates

_____

to show cause and other pleadings filed by non-attorney employees of the DCSE in the Juvenile and Domestic Relations Courts and on appeal to the Virginia Court of Appeals or to the Virginia Supreme Court. In fact, as the plaintiff has noted, at least one such court in Fairfax County has held that such pleadings and motions are void because they are not signed by attorneys. Therefore, it does appear that a non-custodial parent such as Briggman can have appropriate redress in the Virginia judicial system and that those remedies should be pursued before attempting to obtain a remedy in federal court.

[2] Count Nine asserts a statutory conspiracy claim pursuant to 42 U.S.C. § 1985 based upon the allegedly unauthorized practice of law by non-attorney employees of the DCSE. Because the court lacks subject matter jurisdiction over the underlying claim, the court also lacks subject matter jurisdiction over the conspiracy claim.

14

to bar actions in which a state is named as a defendant as well as actions "against state agents and state instrumentalities." Regents of the Univ. of California v. Doe, 519 U.S. 425, 428 (1997). This immunity also applies to "state employees acting in their official capacity." Harter v. Vernon, 101 F.3d 334, 337 (4th Cir. 1996) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)). As there appears to be no dispute as to whether the defendants, with the exception of Gregory E. Stambaugh and James B. Pattison, are state agents or employees, the Eleventh Amendment would bar plaintiff's requests for money damages in this case against the various state agencies or the state employees in their official capacities.

Count Eight of the amended complaint, regarding the allegedly retrospective modification of child support orders through the imposition of interest, includes allegations that, after the General Assembly gave the DCSE the statutory authority to collect interest on child support arrearages, the DCSE added nearly $30,000 of interest onto the plaintiff's child support arrearage which was allegedly incurred prior to the effective date of that statute. The plaintiff also asserts that the General Assembly subsequently lowered the statutory interest rate which lowered the total due to custodial parents. According to the plaintiff, these actions took place without court approval in violation of federal and state law. Based upon the allegations included in Count Eight, it appears that Briggman is seeking compensation for the interest added to his account by the DCSE pursuant to statute. Because this claim for damages is asserted against a state agency, in this case the DCSE, that agency is immune under the Eleventh Amendment. Therefore, Count Eight of the amended complaint will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

With regard to Briggman's remaining federal claims, Counts Two, Three, Four and Ten, the court notes that, although these claims are asserted against state officials, that is, the Juvenile and Domestic Relations Court and Circuit Court judges as to Counts Two, Three and Ten and the judges and clerks of the Juvenile and Domestic Relations Courts as to Count Four, the plaintiff appears to seek primarily injunctive relief. As the plaintiff notes, the doctrine of Ex parte Young permits an individual "to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute." Franks v. Ross, 313 F.3d 184, 197 (4th Cir. 2002) (internal citation omitted). In determining whether the doctrine applies, a court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Id. (quoting Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635 (2002)).

Here, the plaintiff is primarily requesting injunctive relief in these remaining counts with regard to the defendants' practices in their collection and enforcement efforts related to his child support obligations in the future as well as in support proceedings generally. Therefore, the doctrine of Ex parte Young would permit the plaintiff to maintain his suit against the remaining named state defendants in their official capacities for purposes of his attempt to obtain injunctive relief related to the claims set forth in Counts Two, Three, Four, and Ten.

E.    **Judicial Immunity**

As previously noted, the defendants referred to in the remaining counts of the amended complaint which assert federal claims are either Juvenile and Domestic Relations Court judges, Circuit Court judges, or clerks of the Juvenile and Domestic Relations Courts. The defendants

16

claim that the state judges are immune from the plaintiff's claims for money damages by operation of the long-standing doctrine of judicial immunity. "Judicial immunity is an immunity from suit, not just from ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991). A judge will be subject to liability only if "he has acted in the clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (internal citation omitted). Clerks of court may also be immune from suit for actions taken within their jurisdiction. See Sindram v. Suda, 986 F.2d 1459, 1460-61 (D.C. Cir. 1993) (holding that "clerks, like judges, are immune from damage suits for performance of tasks that are an integral part of the judicial process"). Nevertheless, "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." Pulliam v. Allen, 466 U.S. 522, 541-42 (1984). See also, Lewis v. Blackburn, 734 F.2d 1000, 1008 (4th Cir. 1984) (holding that "judicial immunity will not bar injunctive relief").

In this case, the court finds that judicial immunity would protect the individual judges from any of the plaintiff's claims which could be construed as requesting monetary damages. Therefore, to the extent that the plaintiff seeks damages with regard to Counts Two, Three, Four and Ten, the judges would be immune. With regard to the plaintiff's requests for injunctive relief as to these counts, however, neither the judges nor the clerks are immune, and those claims must be examined further.[3]

---

[3] The defendants have also asserted that the plaintiff's claims may not go forward because they are covered by qualified immunity in that they claim they did not violate any established constitutional rights of which reasonable state officers would have been aware. It is true that qualified immunity will operate "to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Saucier v. Katz, 533 U.S. 194, 206 (2001)). Nevertheless, although the defendants may be correct that qualified immunity would prevent the plaintiff from seeking any monetary damages with regard to his remaining federal claims, the plaintiff is primarily seeking injunctive relief for which qualified immunity, like judicial immunity, would not apply.

17

**F.     Plaintiff's Claims Under 42 U.S.C. § 1983**

Counts Two, Three, and Four of the amended complaint assert claims under 42 U.S.C. § 1983. Therein, the plaintiff claims that he was deprived of liberty and property without due process of law. Section 1983 imposes civil liability on any person acting under color of state law to deprive another person of rights and privileges secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. The plaintiff seeks injunctive relief to prohibit the judges from imposing purge clauses in criminal contempt cases, imposing purge clauses in civil contempt cases without a finding of the present ability to pay, and permitting the clerks of court to issue summonses. The defendants contend, however, that this request must fail as a matter of law because the plaintiff lacks standing in that he is unable to establish that he faces a threat of present or future harm.

Generally, "federal injunctive relief is an extreme remedy." Simmons v. Poe, 47 F.3d 1370, 1382 (4th Cir. 1995). Therefore, in order to obtain injunctive relief in a particular case, a plaintiff must make a showing of "irreparable injury, a requirement that cannot be met where there is no showing of real or immediate threat that the plaintiff will be wronged again - a likelihood of substantial and immediate irreparable injury." Id. (quoting Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)). See also, Hoepfl v. Barlow, 906 F. Supp. 317, (E.D. Va. 1995) (holding that a plaintiff will be precluded from obtaining injunctive relief based upon past injuries and instead must show that he faces a "threat of present or future harm"). In addition, to the extent that Briggman seeks injunctive relief to benefit other similarly situated individuals, the plaintiff cannot assert such a claim of undifferentiated harm or "generalized grievance" on behalf

18

of others. See Hoepfl, 906 F. Supp. at 322-23 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 573-74 (1992)).

As the defendants note, the plaintiff has alleged only past injuries, but no immediate or future injuries. In fact, the injunctive relief requested by the plaintiff presupposes that the plaintiff will again subject himself to court proceedings by failing to meet his child support obligations. As the child to whom Briggman owed an obligation of support is now an adult, he will presumably accumulate no new child support obligations going forward. Under these circumstances, the plaintiff is simply not entitled to injunctive relief regardless of the merits of his underlying claims.

The attorney for the defendants represented at the hearing, however, that Briggman does have outstanding child support arrearages at this time, although it is not clear whether the DCSE will choose to attempt to initiate contempt proceedings against him once again for failure to pay those obligations. The plaintiff also represented at the hearing that he may currently be in violation of a court order regarding his support obligations, although he is not aware of the specifics of any such violation, because he claims that the DCSE recently ordered the DMV to suspend his driver's license.

Nevertheless, even if court proceedings with regard to Briggman's non-payment of child support are currently underway and may involve purge clauses or the issuance of summonses, the court finds that the plaintiff's claims in Counts Two, Three, and Four would be barred by the abstention doctrine set forth in Younger v. Harris, 401 U.S. 37 (1971).[4] "Younger abstention is a

---

[4] Although abstention was not specifically addressed by the parties, the court may raise the issue sua sponte. See Bellotti v. Baird, 428 U.S. 132, 143 n. 10 (1976).

19

doctrine requiring federal courts to refrain from interfering with ongoing state judicial proceedings that implicate important state interests." Life Partners, Inc. v. Morrison, 484 F.3d 284, 300 (4th Cir. 2007). Therefore, in the absence of extraordinary circumstances, which are not present here,

> Younger mandates that a federal court abstain from exercising jurisdiction and interfering with a state [] proceeding if (1) there is an ongoing state judicial proceeding brought prior to substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides adequate opportunity to raise constitutional challenges.

Nivens v. Gilchrist, 444 F.3d 237, 241 (4th Cir. 2006). It is well established that child support matters implicate important state interests. See Moore v. Sims, 442 U.S. 415, 435 (1979) (family relations are a traditional area of state concern); Mann v. Conlin, 22 F.3d 100, 106 (6th Cir. 1994) (domestic relations law is a "paramount state interest").

With regard to Counts Two, Three and Four, therefore, the plaintiff is not entitled to injunctive relief in the absence of a showing that there is a threat of present or future harm to his interests. Furthermore, even if Briggman can demonstrate that he is subject to ongoing judicial proceedings, as evidenced by the suspension of his driver's license at the request of the DCSE, which may subject him to the payment of purge clauses or require the issuance of summonses as outlined in his Counts Two, Three and Four, this court would dismiss these federal claims pursuant to the Younger abstention doctrine. The plaintiff would have an adequate opportunity to raise any constitutional challenges to the practices of the Virginia agencies and officials in the state child support proceeding, and no substantial progress has been made in the instant proceeding. Therefore, under either scenario, Counts Two, Three, and Four of the amended complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

**G.**     **The Plaintiff's Claims for Statutory Conspiracy Under 42 U.S.C. § 1985**

In his amended complaint, the plaintiff has asserted two claims of statutory conspiracy to violate civil rights. As noted in III.C., <u>supra</u>, Count Nine asserts such a claim in light of the plaintiff's allegations regarding the practice of law by non-attorney employees of the DCSE and will be dismissed pursuant to the <u>Rooker</u>-<u>Feldman</u> doctrine. In Count Ten of the amended complaint, the plaintiff asserts that the Circuit Court and Juvenile and Domestic Relations Court judges have sanctioned a practice of permitting privately retained attorneys who represented custodial parents in custody, visitation and support matters to initiate and prosecute criminal contempt charges which may have arisen in the underlying civil matters. The defendants contend that these allegations are not sufficient to establish a claim for statutory conspiracy to violate civil rights and that this claim should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

In order to establish a claim for conspiracy to deny equal protection of the laws under 42 U.S.C. § 1985, a plaintiff must demonstrate the following:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

<u>Simmons v. Poe</u>, 47 F.3d 1370,1376 (4th Cir. 1995). Furthermore, the plaintiff "must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." <u>Id.</u> at 1377. A claim for conspiracy under § 1985 must be supported by concrete facts and will be rejected if it is supported only by conclusory allegations. <u>Id.</u>

21

The plaintiff appears to assert that all of the Virginia Circuit Court and Juvenile and Domestic Relations Court judges have engaged in this conspiracy, in conjunction with the DCSE, in order to ensure that the Commonwealth receives some sort of "financial kickback" from the federal government based upon the total amount of support payments that flow through the DCSE program. The court finds that these conclusory allegations are insufficient to maintain a claim under 42 U.S.C. § 1985. Furthermore, the plaintiff has failed to set forth any class-based, invidiously discriminatory animus toward himself or any other potentially affected persons. Therefore, Count Ten of the amended complaint will be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

**H.      The Plaintiff's State Claims**

The remaining claims included in the plaintiff's amended complaint, Counts Five, Six, Eleven, and Twelve, set forth claims under state law. Because the court has determined to dismiss the plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over the plaintiff's claims under state law. See 28 U.S.C. § 1367(c). Accordingly, such claims will be dismissed without prejudice.

**THE PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION**

The plaintiff has filed two motions for preliminary injunction in this case. In the first, the plaintiff requests the court to prohibit non-attorney employees of the DCSE from signing pleadings or motions for show cause summons that present legal conclusions on behalf of the agency. In the second, the plaintiff requests the court to prohibit the Commonwealth of Virginia or any agency thereof from taking any action against any person under any order of a state court which followed the filing of a pleading or motion that was signed by a non-attorney employee of

22

the DCSE. Because the court has determined that the plaintiff's claims relating to the allegedly unauthorized practice of law must be dismissed, the motions for preliminary injunction will be dismissed as moot.[5]

**THE PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

As previously discussed, the court has determined that all of the plaintiff's claims will be dismissed. Therefore, the plaintiff's motion for class certification is moot.

**CONCLUSION**

For the reasons stated, the court will grant the defendants' motion to dismiss. All of the plaintiff's claims will be dismissed without prejudice. The plaintiff's motions for preliminary injunction and motion for class certification will be dismissed as moot.

The Clerk of Court is directed to send certified copies of this opinion and the accompanying order to the plaintiff and all counsel of record.

ENTER:        This ⟨21st⟩ day of December, 2007.

_____
United States District Judge

---

[5] The court also notes that the attorney for the state defendants represented at the hearing that non-attorney employees of the DCSE are no longer signing motions for show cause summonses. Instead, DCSE attorneys are signing those documents on behalf of the agency. As a result, there would be no action currently taken by the DCSE for the court to enjoin with regard to the alleged unauthorized practice of law.

23